UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SCOTT C. CABIBI, | Case No.: 5:09-CV-03768-LHK |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Scott C. Cabibi ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) to obtain review of the Social Security Administration Commissioner's decision denying his claim for disability benefits. The Administrative Law Judge found that Plaintiff's recurrent right inguinal hernia reduced his capacity for work, but was not disabling. Plaintiff seeks an order reversing the decision and awarding benefits. Presently before the Court are the parties' Cross-Motions for Summary Judgment. Having considered the parties' papers and the administrative record, the Court DENIES Plaintiff's Motion and GRANTS Defendant's Motion.

///

///

1

Case No.: 09-CV-03768-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

# I. BACKGROUND

## A. Procedural History

On February 8, 2008, Plaintiff filed concurrent applications for Supplemental Security Income (SSI) benefits and Disability Insurance Benefits under Title XVI and II of the Social Security Act. Administrative Transcript ("Tr.") 9, 88-92, 93-99. Plaintiff alleges that he became disabled on March 1, 2007 due to a recurrent right inguinal hernia.[1] Tr. 31. Plaintiff's application was denied initially, and upon reconsideration, based on findings that Plaintiff's impairments were not disabling and that Plaintiff could still perform light work. Tr. 58, 63. Plaintiff disputes the finding that his inguinal hernia is non-disabling.

On March 17, 2009, Plaintiff appeared pro se and testified in an appeal hearing before an Administrative Law Judge (ALJ) at the Office of Hearings and Appeals in San Jose, California. Tr. 27-53. In an April 1, 2009 decision, the ALJ found that, although Plaintiff had reduced functional capacity due to the hernia, Plaintiff was not disabled because he could still perform "light work" in the national economy. Tr. 16. The ALJ based his finding on the determination that the intensity and persistence of Plaintiff's self-reported symptoms were not entirely credible, especially given "uncontroverted medical opinions . . . in the record." Tr. 14. On May 21, 2009, the Social Security Appeals Counsel denied Plaintiff's request for review. Tr. 1. Presently before the Court are the parties' cross-motions for summary judgment. Dkt. Nos. 21, 22.

## B. Relevant Factual History

Plaintiff was born on October 31, 1963, and is a high school graduate who attended one year of college. Tr. 239, 38. In his application for disability benefits, Plaintiff alleged that he suffers from a recurrent right inguinal hernia.[2] In the years preceding his alleged disability,

---

[1] Originally, Plaintiff alleged that his disability began on March 1, 2006. Tr. 93. During his administrative hearing, however, he revised the date of onset to March 1, 2007. Tr. 30-31.

[2] Plaintiff did not claim any mental disabilities, including depression, in his application or present additional evidence at his hearing. Although the U.S. Attorney represents in its Motion for Summary Judgment that a "mental health assessment showed Plaintiff received the highest marks and had no limitations on his ability to learn (AR 214)," Dkt. No. 22, Section III, the record cited by the U.S. Attorney is clearly a self-assessment rather than a careful medical screen. There are no other medical documents detailing Plaintiff's mental health, although he reports his "pain happens daily for the most (unbarable [sic].) and causes major depression," Amended Complaint ("AC"),

2

Case No.: 09-CV-03768-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1  Plaintiff received on-the-job training in pipe-fitting, and held jobs in the fields of fire
2  prevention/general labor (1998-2001), general labor/construction (1987-2008), and plumbing
3  (2005-2006). Tr. 44, 144, 134.

4  All available medical records confirm that Plaintiff suffers from a recurrent right inguinal
5  hernia that needs a simple surgical correction for a full recovery. Tr. 203-72 (demonstrating that
6  every examining and non-examining medical professional concurs in the diagnosis and prognosis).
7  Plaintiff alleges this injury occurred while doing construction work in March of 2007. Tr. 33-35.
8  He was first diagnosed with a right inguinal hernia requiring surgery on March 15, 2007, Tr. 272,
9  and in April 2007 was referred to a surgical clinic. Tr. 205, 209-10. Plaintiff did not have faith in
10 the two "very, very young [surgical interns with whom he spoke and he] did not talk to a surgeon."
11 Tr. 39, 14. Plaintiff did not follow up with those or any other surgeons, despite additional referrals
12 during his admission to the Santa Clara Valley Medical Center (SCVMC) emergency room on
13 January 3, 2008[3] and June 19, 2008. Tr. 13-14, 39. In the summer of 2008, Plaintiff's case file
14 was reviewed by state agency medical consultants, Drs. Ian Ocrant and W. Jackson. Tr. 13, 226-
15 27, 239-40. Based upon Plaintiff's medical records, both doctors opined that he would be capable
16 of performing a full range of light exertional work. Tr. 13, 226-27, 239-40. On December 27,
17 2008, Plaintiff again visited the SCVMC emergency room with 30 minutes of severe pain due to
18 the right inguinal hernia. Tr. 262. Although Plaintiff was normally able to reduce the size of the
19 hernia, the pain prevented reduction on that occasion. *Id.* After treatment with pain killers, his
20 hernia was manually reduced. Tr. 267. On January 15, 2009, Plaintiff was examined by Dr. Gable,
21 a consulting physician, who concluded that Plaintiff was not fully disabled. Tr. 259-60.

22 In the April 1, 2009 Decision denying Plaintiff's claim for disability, the ALJ reasoned that
23 certain evidence in the record suggests that Plaintiff's hernia was not fully disabling. Tr. 13-15.
24 For example, the report of Dr. Gable noted several inconsistencies in Plaintiff's admission of past

---

Docket Item No. 5 at ¶ 6 (3 of 6), and "(I hope this is not mental illness (but the man won't leave my mind at times and is babaling [sic]." Additional Information filed by Plaintiff Scott C. Cabibi on March 25, 2010, Dkt. No. 6 at ¶ 5.

[3] Plaintiff was also referred to SCVMC's General Assistance program for financial assistance for surgery. Tr. 219.

3
Case No.: 09-CV-03768-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

drug use and the severity of his complaints as compared to his condition. Tr. 259. Dr. Gable also reported that with the aid of a properly fitted truss, Plaintiff should be capable of performing a wide range of light exertional work. Tr. 260. Dr. Gable concluded that Plaintiff could still sit for six hours a day with usual breaks, even without a supportive truss. Tr. 260.

Because the ALJ found the Plaintiff not entirely credible, Plaintiff's testimony was discounted to the extent it was inconsistent with Dr. Gable's residual functional capacity assessment. Tr. 14. The medical opinion of Dr. Gable was accorded the greatest weight, in that it was well supported by the evidence in the record as a whole. Tr. 15. The ALJ also accorded significant weight to the opinions of the state agency medical consultants, and found that they were in general accord with the opinion of Dr. Gable. *Id.*

## II. LEGAL STANDARDS

### A. Standard for Reviewing the ALJ Decision

The Court has authority to review the ALJ decision pursuant to 42 U.S.C. § 405(g). The Court may only disturb the ALJ decision if it is unsupported by substantial evidence in the record as a whole or if it is not an application of the proper legal standard. 42 U.S.C. § 405(g); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, " *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)), and it "means more than a scintilla but less than a preponderance." *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation and internal quotation marks omitted). If the evidence supports more than one rational interpretation, the Court must uphold the ALJ's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). This substantial evidence standard applies when reviewing the ALJ's credibility determinations. *Thomas v. Barnhart,* 278 F.3d 947, 959 (9th Cir. 2002).

### B. Standard for Determining Disability

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

4

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must also be so severe that a claimant is unable to do his previous work, and cannot "engage in any other kind of substantial gainful work which exists in the national economy," given his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A). "The claimant carries the initial burden of proving a disability." *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005). To make a prima facie case of disability, a claimant must show that: (1) he is not presently engaged in a gainful activity, (2) that his disability is severe, and (3) that he cannot perform work he has done in the past. After the claimant has made a prima facie case of disability, the Commissioner has the burden of establishing that the claimant can perform "a significant number of other jobs in the national economy." *Thomas*, 278 F.3d at 955. "The Commissioner can meet this burden through the testimony of a vocational expert or by reference to the Medical Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." *Id.*

The ALJ evaluates Social Security disability cases using a five-step evaluation process. 20 C.F.R. § 404.1520.

> 1) The ALJ must first determine whether the claimant is presently engaged in substantially gainful activity. 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled; otherwise the evaluation proceeds to step two.
>
> 2) The ALJ must determine whether the claimant has a severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). If not, the claimant is not disabled; otherwise the evaluation proceeds to step three.
>
> 3) The ALJ must determine whether the claimant's impairment or combination of impairments meets or medically equals the requirements of the Listing of Impairments, 20 C.F.R. § 404, Subpart P, App. 1.; 20 C.F.R. § 404.1520(d). If so, the claimant is disabled; otherwise the analysis proceeds to step four.
>
> 4) The ALJ must determine the claimant's residual functional capacity despite limitations from the claimant's impairments. 20 C.F.R. § 404.1520(e). If the claimant can still

perform work that the individual has done in the past, the claimant is not disabled. If he cannot perform the work, the evaluation proceeds to step five. 20 C.F.R. § 404.1520(f).

5) In this step, the Commissioner has the burden of demonstrating that the claimant is not disabled. The Commissioner must show that the claimant can perform some substantial gainful work in the national economy, considering a claimant's age, education, and vocational background. 20 C.F.R. § 404.1520(g)(1).

**C.   Standard for Finding the Claimant Unreliable**

The ALJ must support a finding that the claimant's subjective testimony is not reliable with specific, clear and convincing evidence from the record. *Thomas*, 278 F.3d at 958-59. "The ALJ may consider at least the following factors when weighing the claimant's credibility: claimant's reputation for truthfulness, inconsistencies either in claimant's testimony or between [his] testimony and [his] conduct, claimant's daily activities, [his] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains." *Id*. (internal citation omitted).

### III. ANALYSIS

In finding Plaintiff not disabled, the ALJ correctly applied the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920. *See* Tr. 6-16. First, the ALJ determined that Plaintiff had not performed substantial gainful activity since his alleged onset date. Tr. 11. Second, the ALJ found that Plaintiff's medically determinable impairment, an inguinal hernia, met the severity requirement. Tr. 11. Third, the ALJ determined that Plaintiff's impairments did not meet or equal any impairment listed in 20 C.F.R., Part 404, Subpt. P., App. 1 ("Listed Impairment"). Tr. 11. Plaintiff presented no plausible theory that he had an impairment that met or equaled a Listed Impairment, nor is there any medical evidence in the record that would support such a theory. Tr. 11-15; s*ee Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001) (claimant did not offer any theory as to how his impairments combined to equal a listed impairment). Therefore, substantial evidence supports the ALJ's findings in each of the first three steps.

6

Case No.: 09-CV-03768-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The dispute here turns on steps four and five of the ALJ's evaluation process, namely the ALJ's determinations of Plaintiff's residual functional capacity ("RFC") and his ability to perform gainful work in the national economy. The ALJ found that although Plaintiff's right inguinal hernia significantly limits his range of work activities, Plaintiff can still perform light exertional work, and is therefore not disabled under the Social Security Act. Tr. 14-16.

### I. Step Four: Determining Plaintiff's RFC Despite Limitations

Plaintiff argues that his RFC is significantly lower than the ALJ determined, and points to three factors he claims were improperly considered or omitted from the analysis: (1) there was no consideration of potential future injuries from Plaintiff's prior work with corrosive chemicals; (2) Drs. Ian Ocrant and W. Jackson made conclusions without physically examining Plaintiff; and (3) Dr. Ian Ocrant's review on May 19, 2008 failed to consider a medically documented incident that occurred on December 27, 2008. AC ¶ 5-6. The Court will address each argument in turn.

First, Plaintiff claims that he "worked 2 1/2 years with <u>corrosive</u> <u>chemicals</u> . . . not yet knowing what other kind of complications there are in me (if are) can and does only make mattes [sic] worse." AC ¶ 5 (emphasis in original). Federal Regulations mandate that the SSA can consider only impairments which claimants "say [they] have or about which [the SSA] receive[s] evidence." 20 C.F.R. § 404.1512. Unsubstantiated speculation about future impairments cannot be considered by the ALJ in determining disability. Here, the ALJ carefully considered the entire record, which presented no claims or evidence of impairments related to Plaintiff's past work with corrosive chemicals. Therefore, the ALJ's ruling is supported by the record on this point.

Next, Plaintiff argues that "the May 19, 2008 consultation by this <u>Dr. Ian Ocrant</u> does not take into account DECEMBER 27 2008 emergency fall or constriction." AC ¶ 6 (2 of 6) (emphasis in original). While this is true, the Court notes that it was not possible for Dr. Ian Ocrant to evaluate future events when he reviewed Plaintiff's medical records; he could only evaluate the record as it appeared before him. Nevertheless, the medical records detailing the December 27, 2008 emergency visit were specifically considered in the ALJ's review and determination. Tr. 13. In fact, the ALJ gave the most weight to the consulting examiner, Dr. Clark Gable, who personally

7

Case No.: 09-CV-03768-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

examined Plaintiff nineteen days *after* the December 27, 2008 incident. Tr. 15 ("the opinion of examining internist Dr. Gable is well supported by the evidence in the case record as a whole. It is therefore accorded the greatest weight."); Tr. 259 (Dr. Gable noted, "[Plaintiff] developed an irreducible hernia and required morphine in the emergency room with subsequent manual reducibility in the emergency room."). Accordingly, the record confirms this event was given adequate consideration by both a consulting physician and the ALJ.

The final allegation raised by Plaintiff is that the conclusions of Drs. Ian Ocrant and W. Jackson should not be considered, as neither doctor personally examined Plaintiff. AC ¶ 6 (2 of 6). However, federal regulations permit the ALJ to consider evidence from non-treating medical sources in the determination of disability. 20 C.F.R. § 404.1527(f)(2)(i) ("State agency medical . . . consultants . . . are highly qualified physicians . . . who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider [their findings] . . . as opinion evidence, except for the ultimate determination about whether you are disabled."). As a result, the ALJ's decision to give "significant weight to the opinions of the state agency medical consultants" was in accordance with federal law. Tr. 15.

To the extent Plaintiff raises a general challenge to the ALJ's decision, there is substantial evidence in the record to support the ALJ's conclusion that Plaintiff's testimony was not entirely credible. The ALJ considered Plaintiff's work history, reputation for truthfulness, inconsistencies in the record, and the testimony of physicians.[4] Tr. 14-16. *See, e.g.*, *Thomas*, 278 F.3d at 958-59. For example, the ALJ noted "claimant's poor work history and earnings record even prior to the alleged onset of disability" and inconsistencies between the Plaintiff's subjective complaints and the medical records of treating, reviewing and examining physicians, and the "absence of any abnormal clinical signs or laboratory findings which would support the conclusion that the

---

[4] The Court is unable to find where the ALJ considered Plaintiff's daily activities in reaching this conclusion, despite the citation in Defendant's Motion for Summary Judgment. *Compare* MSJ, Dkt. No. 22, 9:21-22, *with* Tr. 14-15. However, Plaintiff was assessed by Dr. Gable as having no physical impairments. Tr. 258. Plaintiff also admitted that lifting five pounds is "easy," he can "carry [his] clothes to do laundry," and his "regular daytime" routine includes getting up in the morning, walking to the library, and reading. Tr. 37-38. Therefore, the Court concludes he has no limitations in daily living activities.

8

Case No.: 09-CV-03768-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

claimant would be incapable of performing at least light exertional work with the proper prosthetic support." Tr. 14. In addition, the ALJ considered the absence of longitudinal records seeking pain relief, failure to obtain surgery after more than two years, and refusal to try prescribed treatment modalities. *Id.* at 13-15. Finally, the ALJ pointed out inconsistencies in Plaintiff's statements regarding past drug use.[5] Tr. 14.

The Court also finds substantial evidence in the record supporting the ALJ's conclusion that Plaintiff was not fully disabled and still had the RFC to perform light work. The ALJ based his findings, in part, on the January 15, 2009 report of Dr. Gable. Tr. 13-15. Dr. Gable noted that although the hernia was quite large, the claimant was able to reduce it himself quite easily and was also able to "hold it in." Tr. 14, 260. Dr. Gable concluded that Plaintiff could carry no more than 20 pounds occasionally and lift no more than 10 pounds frequently; stand and/or walk no more than 6 hours in total in an 8-hour workday; and sit no more than 6 hours total in an 8-hour workday. Tr. 253-58. Dr. Gable also found Plaintiff had limited use of foot controls, climbing, balancing, stooping, kneeling, crouching, and crawling.[6] *Id.* On this basis, the ALJ concluded that these limitations prevent Plaintiff from performing any past relevant work. Tr. 15. However, the ALJ determined, based upon Dr. Gable's report and vocational expert testimony, that Plaintiff's RFC still allowed him to perform other jobs that exist in the national economy.

**II. Step Five: Commissioner's Demonstration that Claimant is not Disabled**

Plaintiff is clear that he wants to "live a normal life and go back to work in [his] given line of work." AC ¶ 5; see also Tr. 47 (at the hearing, Plaintiff suggested he could work as a security guard, despite his medical condition). Nevertheless, Plaintiff disputes the ALJ's determination, and the opinion of Dr. W. Jackson, that he can perform "all kinds of work." AC ¶ 5, 6 (2 of 6).

Based upon the entire record, the ALJ found that Plaintiff still had the RFC to perform light exertional work. Tr. 16. For example, the ALJ determined that Plaintiff's limitations included:

---

[5] Plaintiff denied ever using illicit drugs, despite a reference in his medical records to IV drug use thirteen years ago. Tr. 259.
[6] Dr. Gable established the above exceptional limitations in a check-box form "Medical Source Statement of Ability to do Work-Related Activities." Tr. 253-58. No other physician who examined Plaintiff reported on his functional capacity for work.

9
Case No.: 09-CV-03768-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

lifting and carrying no more than 20 pounds occasionally and no more than 10 pounds frequently; standing and/or walking no more than 6 hours in total in an 8-hour workday; and sitting no more than 6 hours total in an 8-hour workday. Tr. 12. Taking into consideration these limitations, the ALJ found that Plaintiff's hernia is not completely disabling. Tr. 14-16. As noted above, these findings are supported by substantial evidence in the record. *See* 20 C.F.R. 404.1527(f)(2)(i) ("administrative law judges must consider findings and other opinions of State agency medical . . . consultants . . . and other medical specialists as opinion evidence").

Furthermore, the determination that Plaintiff had the age, education, work experience, and RFC to perform several types of jobs that have significant numbers in the local and national economy is well supported by the record and the vocational expert who testified at the hearing. Tr. 43-50; 15-16 (the impartial vocational expert testified that work as a parking lot attendant or light janitorial/housekeeping jobs are available in significant numbers in the national and local economy). *See Thomas*, 278 F.3d at 955 ("The Commissioner can meet [his] burden through the testimony of a vocational expert . . . ."). Accordingly, substantial evidence supports the ALJ's determination that Plaintiff can perform "any other work" and is therefore not disabled.

## IV. CONCLUSION

In sum, the ALJ's decision that Plaintiff is not disabled under the Social Security Act is supported by substantial evidence in the record. Accordingly, Plaintiff's motion for summary judgment is DENIED, and Defendant's motion for summary judgment is GRANTED. The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: December 16, 2011

*Lucy H. Koh*
LUCY H. KOH
United States District Judge

10

Case No.: 09-CV-03768-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT